IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KAREN LEE WILSON**, *Administratrix of Estate of Kyisha Erin-Minae Harvin*,<br><br>    Plaintiff,<br><br>    v.<br><br>**SIDRA HAQUE, MD**, *et al.*,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 24-2653-KSM |

## MEMORANDUM

**Marston, J.**                                                                                 December 11, 2024

      Plaintiff Karen Lee Wilson, acting as administratrix of the estate for her daughter, Kyisha Erin-Minae Harvin, brought this medical malpractice action in the Court of Common Pleas of Philadelphia County against Ms. Harvin's obstetricians, Defendants Sidra Haque, M.D., Rachel Draper, M.D., and Erika Pack, M.D. (collectively, the "Resident Physicians"), and the health center where the Resident Physicians met with Ms. Harvin, former-Defendant ChesPenn Health Services, Inc. (Doc. No. 1-2.) The United States, acting on behalf of ChesPenn, removed the matter to this Court, arguing that ChesPenn was deemed an employee of the United States Public Health Service, and therefore, Ms. Wilson's exclusive remedy was against the United States under the Federal Tort Claims Act ("FTCA"). (Doc. No. 1.) After the case was removed, Ms. Wilson voluntarily dismissed her claims against ChesPenn (Doc. No. 10) and moved to remand her remaining claims against the Resident Physicians (Doc. No. 13). The Resident Physicians oppose the motion to remand. (Doc. No. 14.) For the reasons discussed below, the motion is granted.

I.    **FACTUAL BACKGROUND**

In August 2021, Ms. Harvin tested positive with a home pregnancy test and contacted ChesPenn to request an office visit. (Doc. No. 1-2 at ¶ 6.) During her first appointment on August 16, 2021, she was examined by Dr. Pack and Robert Berkowitz, M.D. (*Id.* at ¶¶ 7, 9.) At the time, Dr. Berkowitz, who supervised the three Resident Physicians, had been Ms. Harvin's obstetrician-gynecologist for many years. (*Id.* at ¶¶ 5, 15.)

Ms. Harvin reported having "problems" in the first few weeks of her pregnancy, so Dr. Pack and Dr. Berkowitz ordered "NOB labs."[1] (*Id.* at ¶ 9.) The results of those labs were reviewed on August 23, 2021 by Dr. Haque, who sent a letter to Ms. Harvin asking Ms. Harvin to call her to discuss them. (*Id.* at ¶ 10.) One week later, Ms. Harvin went to ChesPenn for a second appointment, this one conducted by Dr. Draper and Dr. Berkowitz. (*Id.* at ¶ 11.) Dr. Draper performed a "bedside" ultrasound and again noted Ms. Harvin was reporting "several" "[p]renatal [i]ssues." (*Id.*) Additional lab results were reviewed by Dr. Draper on September 8, 2021, but it is unclear whether Dr. Draper discussed those results with Ms. Harvin. (*Id.* at ¶ 13.)

Less than a week later, on September 14, 2021, Ms. Harvin reported severe abdominal pain and paramedics were called to her home. (*Id.* at ¶ 14.) She entered cardiac arrest and was resuscitated and transported to Crozier Chester Medical Center. (*Id.*) Ms. Harvin went into cardiac arrest a second time in the Crozier Emergency Department and was resuscitated and rushed to surgery. (*Id.*) During surgery, she entered cardiac arrest for a third time and passed away. (*Id.*)

An autopsy was performed. (*Id.* at ¶ 17.) And on September 23, 2021, Assistant Medical Examiner Bennett Preston, M.D., issued a death certificate, which listed the cause of Ms.

---

[1] It is unclear from the record to what the acronym "NOB" refers.

Harvin's death as intra-abdominal hemorrhage and ruptured right fallopian tube pregnancy. (*Id.* at ¶ 16.)

## II.   PROCEDURAL HISTORY

On August 18, 2023, Ms. Wilson, in her capacity as administratrix of her daughter's estate, filed this medical malpractice action in the Philadelphia Court of Common Pleas against ChesPenn and the Resident Physicians. (*See* Doc. No. 1-1 at 2.)[2] Defendants were served with copies of the complaint and summons in late 2023 and early 2024. (*See id.* at 9, 11–12, 14–15.) Ms. Wilson filed the operative amended complaint on February 27, 2024 (*id.* at 17), and the parties proceeded with motion practice and early discovery in state court (*id.* at 18–22).

On June 17, 2024, the United States, acting on behalf of ChesPenn, removed the action to this Court pursuant to the Federally Supported Health Centers Assistance Act (the "FSHCAA"), 42 U.S.C. § 233. (Doc. No. 1 at 1–2.) In its notice of removal, the United States explained that during the relevant period, "ChesPenn was an entity that the Secretary of the United States Department of Health and Human Services ['HHS'] had deemed to be an employee of the U.S. Public Health Service under the application provisions of the [FSHCAA]." (*Id.* at 2 (citing 42 U.S.C. § 233).) As such, ChesPenn was covered by the FTCA, "which provides the exclusive remedy for plaintiff's common law tort claim(s) in this action" and grants the United States district courts with "exclusive jurisdiction" over such claims. (*Id.* at 2–3 (citing 42 U.S.C. § 233(a), (c), (g); 28 U.S.C. §§ 1346(b), 2679(b)(1)).) The United States noted that it was not removing the related case against Dr. Berkowitz because unlike ChesPenn, "Dr. Berkowitz is not

---

[2] Ms. Wilson also filed a separate action against Dr. Berkowitz. (*See* Doc. No. 1 at 1 n.1 (referencing Case No. 231100596 in the Philadelphia County Court of Common Pleas).)

3

a deemed federal employee pursuant to 42 U.S.C. § 233." (*Id.* at 1 n.1.) The United States provided no comment on the status of the Resident Physicians.

On August 15, 2024, Ms. Wilson voluntarily dismissed her claims against ChesPenn and asked this Court to remand the remaining claims because the "Notice of Removal was filed by the Dismissed party . . . and this Honorable Court is thereby divested of Jurisdiction." (Doc. No. 10.) At the Court's direction, Ms. Wilson filed a written motion to remand, which fleshed out her argument that remand is required. (Doc. No. 13 at 2.) The Resident Physicians oppose that motion, arguing that the Court retains jurisdiction because like ChesPenn, they are covered by the FTCA and could have removed the action under what is colloquially referred to as the federal officer removal provision, 28 U.S.C. § 1442. (Doc. No. 14 at 4.) The Court held oral argument on the motion on December 2, 2024.

### III. DISCUSSION

The Resident Physicians argue that this action should remain in federal court because they are covered by the FSHCAA and the federal officer removal provision. (*Id.*) Although the Resident Physicians discuss the two provisions as if they are interconnected, they provide distinct bases for removal. Accordingly, the Court addresses each provision in turn.

#### A. The FSHCAA

The Court begins with the FSHCAA, 42 U.S.C. § 233. "Under the FTCA and Public Health Services Act ('PHSA'), Congress protected officers and employees of the Public Health Service from personal liability for the[ir] negligent or wrongful act[s] or omission[s] while acting within the scope of their employment by providing that the United States may assume any such liability." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1267 (D.C. Cir. 2005) (citations omitted). The FSHCAA extended that coverage to "public or non-profit private entities receiving federal funds under the PHSA, and to

4

their officers, board members, employees, and contractors who are physicians or other licensed or certified health care practitioners, and meet certain criteria." *Id.* (citations omitted); *see also* 42 U.S.C. § 233(a) (stating that the FTCA is the exclusive remedy for a plaintiff claiming "personal injury, including death, resulting from the performance of medical" services conducted by "any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment").

To be "deemed to be an employee of the Public Health Service," the private entity or individual seeking such status must apply to the Secretary of HHS. 42 U.S.C. § 233(g)(1)(A). An affirmative determination by the Secretary is "final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding." *Id.* § 233(g)(1)(F). "The Attorney General, upon notice from a deemed defendant" that a malpractice action has been brought against the defendant, must then determine whether "the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose." *Id.* § 233(c). If the Attorney General answers that question in the affirmative, then the FTCA applies, and the Attorney General must, with limited exceptions, "defend against, or compromise, civil actions or proceedings" against the covered entity or individual. *El Rio Santa Cruz*, 396 F.3d at 1267 (citing 42 U.S.C. § 233(b), (d)); *see also Estate of Booker v. Greater Phila. Health Action, Inc.*, 10 F. Supp. 3d 656, 658 (E.D. Pa. 2014) ("Upon receipt of a favorable deeming decision, GPHA and its employees are immunized from personal liability for malpractice claims so long as the allegedly negligent parties were acting within the scope of their employment and providing services within the scope of the center's federally funded activities."). And in the scope of that representation, the Attorney General must remove the action to federal court. 42 U.S.C. § 233(c), (*l*)(1).

ChesPenn's actions in this case are instructive. After being sued by Ms. Wilson in state court, Chespenn notified the United States that medical malpractice claims had been brought against it. 42 U.S.C. § 233(b); (Doc. No. 1). The government, acting on ChesPenn's behalf, then removed the action, noting that "[a]t all times relevant to the complaint, ChesPenn was . . . deemed to be an employee of the U.S. Public Health Service" and that Ms. Harvin's fatal injuries occurred in the scope of that employment. (Doc. No. 1 at 2.) Accordingly, the FTCA provided the exclusive remedy for Ms. Wilson's claims against ChesPenn, and this Court had exclusive jurisdiction to consider those claims. *See* 42 U.S.C. §233(a), (c). There is no question that removal was required by the FSHCAA and that removal was timely given the statute's broad allowance for removal by the United States "at any time before trial." *Id.* § 233(c).

Although removal was proper, the Court is left with the effect of Ms. Wilson's voluntary dismissal of her claims against ChesPenn. As Ms. Wilson argues (*see* Doc. No. 13 at 5–6), the dismissal of those claims appears to have eliminated the federal nexus that served as the basis for this Court's subject matter jurisdiction, such that the Court should now remand her state law claims against the Resident Physicians. *See* 42 U.S.C. § 233(c) ("Should a United States district court determine . . . on a motion to remand . . . that the case so removed is one in which a remedy by suit . . . is not available against the United States, the case shall be remanded . . . ."); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Mikkilineni v. PayPal Inc.*, Civil Action No. 20-647-CFC-SRF, 2020 WL 3792183, at *7 (D. Del. July 6, 2020), *report and recommendation adopted* 2021 WL 810359 (D. Del. Mar. 3, 2021) ("The court's recommendation to dismiss plaintiff's claims against the United States eliminates the federal claims warranting removal, and none of plaintiff's remaining supplemental state law claims

6

against defendants GoDaddy, PayPal, and Shijil invoke federal subject matter jurisdiction. . . . Therefore, the court recommends granting plaintiff's motion to remand only his supplemental state law claims. . . ." (citing 28 U.S.C. § 1447(c))); *Williams v. Phoebe Putney Memorial Hosp., Inc.*, Case No. 1:21-CV-10 (LGA), 2021 WL 5444757, at *2 (M.D. Ga. Feb. 10, 2021) ("As the Government was properly dismissed, the FSHCAA no longer provides a basis for federal jurisdiction." (cleaned up)).

The Resident Physicians oppose remand, arguing that this Court may continue to oversee this action because they, like ChesPenn, are "entitled to the defenses available under the Federal Tort Claims Act." (Doc. No. 14 at 2–3.) They assert that the FTCA applies because they were acting as "the agents of ChesPenn" when they provided care to Ms. Harvin. (*Id.* (citing 42 U.S.C. § 233(g)). But it is not sufficient for the Resident Physicians to vaguely assert that they were acting as ChesPenn's "agents." Section 233(g) is clear that only certain types of agents—employees, officers, and some contractors—are deemed employees of the Public Health Service. 43 U.S.C. § 233(g)(1)(A); *see also El Rio Santa Cruz*, 396 F.3d at 1272 ("In enacting the FSHCAA, 42 U.S.C. § 233(g), Congress extended FTCA coverage for Public Health Service employees to public or non-profit private entities receiving federal funds under the PHSA, 42 U.S.C. § 254b, and to *their officers, board members, employees, and contractors, who are physicians or other licensed or certified health care practitioners, and meet certain criteria*." (emphasis added)).

And the Secretary of HHS, not the Court, determines in the first instance "whether an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service." *Id.* § 233(g)(1)(E); *see also El Rio Santa Cruz*, 396 F.3d at 1267 ("In order to be considered for FTCA coverage, a health center must submit an

7

application to the HHS Secretary verifying that the health center, and the appropriate officer, board member, employee, or contractor of the health center, meet FSHCAA requirements."). And even if the Secretary has issued an affirmative deeming decision, it is for the Attorney General, not the Court, to certify whether "the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose," such that FTCA coverage applies. 42 U.S.C. § 233(c); *see also Blumberger v. Tilley*, 115 F.4th 1113, 1127–28 (9th Cir. 2024) ("The division of labor that Congress has made between the Secretary (who determines an entity's deemed status) and the Attorney General (who determines an employee's coverage status) reflects the unique expertise of the two actors."). The Attorney General makes such a determination only after the defendant notifies the "United States attorney . . . the Attorney General, and . . . the Secretary" of HHS that a suit has been filed. 42 U.S.C. § 233(b).

The Resident Physicians have not shown that they applied to the Secretary for a deeming determination or provided appropriate notice of the lawsuit to the Attorney General. Instead, during oral argument, defense counsel asserted that, at some unidentified time, she spoke on the phone with Assistant United States Attorney Fernando Rivera, who represented ChesPenn in this case. During that conversation, defense counsel argued that the Resident Physicians are deemed employees entitled to FTCA coverage, and AUSA Rivera responded that he would get back to her on the issue. This informal discussion is neither an application to the Secretary for a deeming decision, *see id*. § 233(g)(1)(D) ("The Secretary may not . . . deem an . . . employee, or contractor of the entity to be an employee of the Public Health Service . . . unless the entity has submitted an application for such deeming to the Secretary in such form and such manner as the Secretary shall prescribe."), nor the required notice to the Attorney General, *see id.* § 233(b) ("Any such person against whom such civil action or proceeding is brought shall deliver within

8

such time after date of service or knowledge of service as determined by the Attorney General, all process served upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the Secretary to receive such papers and such person shall promptly furnish copies of the pleading and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary.").

Seeming to acknowledge as much, defense counsel asserted during oral argument that the Resident Physicians' opposition brief should be viewed as a petition to the Court to order the Attorney General to advise whether they are deemed employees. But that request appears *nowhere* in their brief. (*See generally* Doc. No. 14.) And even if the Court were to consider their request, the Resident Physicians have not shown that the Court has the authority to issue such an order at this time.[3] The only provision in the FSHCAA that may contemplate such an order is § 233(*l*)(2), which allows "any entity or officer, governing board member, employee, or contractor of the entity named," to remove a case to federal court when "the Attorney General fails to appear in State court" within 15 days after being notified by the entity or individual requesting representation. 42 U.S.C. § 233(*l*)(2); *cf. Allen v. Christenberry*, 327 F.3d 1290, 1294–96 (11th Cir. 2003) (discussing limited circumstances under which a covered individual, as opposed to the Attorney General, may remove an action pursuant to the FSHCAA). In that limited circumstance, the district court is to "conduct[ ] a hearing, and make[ ] a determination, as to the appropriate forum or procedure for the assertion of the claim for damages." *Id.*

---

[3] During oral argument, defense counsel referenced the Seventh Circuit's decision in *Collins v. United States*, 564 F.3d 833 (7th Cir. 2009), which analyzes whether a settlement agreement discharged the government's liability to the plaintiffs and whether the discretionary function exception shielded the government from liability. Nothing in that opinion suggests the Court can direct the Attorney General to issue a coverage determination here.

To the extent the Resident Physicians ask the Court to conduct such a hearing now and to direct the Attorney General to issue a written determination in connection with that hearing, the Court declines to do so. For one, this case was not removed by the Resident Physicians or pursuant to § 233(*l*)(2). And even if it had been, removal under § 233(*l*)(2) was meant to "apply only where the Secretary already has determined that a defendant is covered by the FTCA." *El Rio Santa Cruz*, 396 F.3d at 1271 (discussing legislative history of the FSHCAA and explaining that this provision "was intended to protect a *covered* defendant against a default judgment due to the Attorney General's untimeliness" (emphasis added)). Neither it nor the remainder of the FSHCAA "authorizes the federal district court to make the deeming determination itself *de novo*, or to overturn a negative coverage determination" by the Secretary. *Id.* at 1272. Instead, the entity or individual should first apply to the Secretary, and if necessary, challenge a negative deeming determination under the Administrative Procedure Act. *See id.* at 1275 ("[T]he APA action is for the purpose of reviewing a negative coverage determination, while § 233(*l*)(2) is to protect a covered defendant against default judgment when the Attorney General fails timely to appear.").

Because the Resident Physicians have not complied with the FSHCAA's procedural requirements, the Court rejects their argument that this case should remain in federal court pursuant to the FSHCAA and FTCA.

### B. The Federal Officer Removal Provision

Next, the Resident Physicians argue that this Court should not remand the claims against them because they are entitled to a federal forum under the federal officer removal provision, 28 U.S.C. § 1442(a)(1). (Doc. No. 14 at 3.) That provision allows removal of a "civil action . . . that is commenced in a State court and that is against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any

10

agency thereof." 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) "is an exception to the well-pleaded complaint rule," in that "a colorable federal defense is sufficient to confer federal jurisdiction." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Assoc. of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015) (quotation marks omitted). The Physicians argue that it confers federal jurisdiction in this case.

To begin, we note that § 1442(a)(1) authorizes removal and does not provide an independent basis for this Court to retain jurisdiction. *See Mesa v. California*, 489 U.S. 121, 129 (1989) ("Section 1442(a) . . . cannot independently support Art. III 'arising under' jurisdiction. Rather it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes."); *Bowers v. J & M Discount Towing, LLC*, 472 F. Supp. 2d 1248, 1264 (N.D. N.M. 2006) (applying "careful scrutiny" to the defendant's assertion that § 1442(a)(1) "provides a basis for federal subject matter jurisdiction" because that provision "does not create federal jurisdiction; it merely provides that certain federal claims can be removed to federal court"). In other words, even assuming the Resident Physicians could have removed the matter to this Court under the federal officer removal provision, it is not clear that the matter can remain here when the provision was not asserted as a basis for removal.

The procedural posture of this case shows why after-the-fact reliance on § 1442(a)(1) is inadvisable. First, removal is appropriate under this provision only when the defendant alleges in the notice of removal that:

> (1) the defendant is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant are "for, or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims.

11

*Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (alterations adopted). But here, the United States, not the Resident Physicians, removed the matter. *See Bowers*, 472 F. Supp. 2d at 1265 (finding "the Court need not reach whether J & M has satisfied the [four elements], because, as Bowers accurately points out, J & M did not remove the case"). And there are no allegations in the notice of removal that address whether the Resident Physicians have met the four elements. (*See generally* Doc. No. 1); *In re Commonwealth's Motion to Appoint*, 790 F.3d at 466 (explaining that the notice of removal "must allege the underlying facts supporting each of the requirements for removal jurisdiction" (quotation marks omitted)). Indeed, the notice of removal discusses only whether removal is appropriate under the FSHCAA. (*Id.* at 1–3.) It does not reference § 1442(a)(1) or its requirements. (*Id.*)

Even if the Court were to focus on the assertions made by the Resident Physicians in their opposition to the motion to remand, that opposition does not allege any facts from which the Court can find the federal officer removal provision applies here. As noted above, to take advantage of this provision, the Resident Physicians must, among other things, assert a colorable federal defense. *See Mesa*, 489 U.S. at 129 ("[F]ederal officer removal must be predicated on the allegation of a colorable federal defense."); *Papp*, 842 F.3d at 815 ("If Boeing is able to prove at trial by a preponderance of the evidence the facts alleged in its notice of removal . . . it will have established a *prima facie* defense under *Boyle* and may prevail on the merits. That is sufficient to constitute a 'colorable' federal defense."); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296–97 (5th Cir. 2020) ("To be 'colorable,' the asserted federal defense need not be 'clearly sustainable,' as section 1442 does not require a federal official or person acting under him 'to win his case before he can have it removed.' Instead, an asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or

'wholly insubstantial and frivolous.' Certainly, if a defense is plausible, it is colorable." (citations omitted)).

Here, the Resident Physicians state in conclusory fashion that "they are entitled to the defenses available under the Federal Tort Claims Act." (Doc. No. 14 at 2.) But their only basis for FTCA coverage is the FSHCAA, and as discussed above, they have not satisfied the procedural obligations necessary for coverage under that Act. *See Ramos v. San Diego Am. Indian Health Ctr.*, Case No. 23-cv-570-MMA-AHG, 2024 WL 1117093, at *9 (S.D. Cal. Mar. 14, 2024) ("Absent a finding that Defendant is immune from suit and substitution of the government, the Court cannot maintain subject matter jurisdiction over this case under the federal officer removal statute. Consequently, even assuming the Court ignores the procedural defect of untimeliness and finds that Defendant adequately pleaded the requirements for federal officer removal, the asserted basis for subject matter jurisdiction under the federal officer removal statute no longer exists and the Court therefore must remand on this basis as well.").

Plus, because the federal officer removal provision was not asserted as a basis for removal, Ms. Wilson was not given an opportunity to raise procedural challenges to removal under that provision. For example, although the FSHCAA allows the United States to remove a case "at any time before trial," removal under § 1442(a)(1) must occur within 30 days of a defendant having notice that removal is appropriate. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."); *Papp*, 842 F.3d at 816 n.10 (recognizing that § 1446(b)'s "30 day window" governed timeliness of § 1442 removal); *Agyin v. Razmzan*, 986 F.3d 168, 179 (2d Cir. 2021) ("[A] case may be removed pursuant to § 1442

13

only 'within 30 days' of receipt of the initial pleading." (quoting 28 U.S.C § 1446)).  Here, defense counsel conceded during oral argument that the 30-day deadline had long since passed when the United States filed its notice of removal.  (*See also* Doc. No. 1-1 (state court docket showing removal occurred months after the complaint was served on the Resident Physicians).)

      Accordingly, the Court also rejects the Resident Physicians' reliance on the federal officer removal provision.

## IV.  CONCLUSION

      For the reasons discussed above, the motion to remand is granted.  An appropriate order follows.